1  MCKEAN LAW OFFICE
   Professional Service Corporation
2  704 East Olive Avenue
3  Moses Lake, WA  98837
   (509) 765-4451
4

5

6                  UNITED STATES DISTRICT COURT
7          FOR THE EASTERN DISTRICT OF WASHINGTON

8  CRAIG JUNGERS, individually, and      )
9  NETPLUS CONSULTING SERVICES,          )
   d/b/a NETPLUS INTERNET SERVICE,       )
10 and NETWORK ESSENTIALS, LTD.,         )
11 d/b/a SLIDERULE.NET, and ED BAXTER,   )
   Individually, and QUICKSILVER ONLINE  )
12 SERVICES, INC., and ALAN CAIN,        )   No.  CV-07-061-JLQ
13 individually, and TERRABYTE SYSTEMS,  )
14 d/b/a BIGDAM NET INTERNET             )   COMPLAINT
   SERVICES                              )
15                                       )
16               Plaintiffs,             )
17 vs                                    )
                                         )
18 PUBLIC UTILITY DISTRICT. NO. 2 of     )
19 GRANT COUNTY, WASHINGTON, and         )
   NORTHWEST OPEN ACCESS                 )
20 NETWORK,                              )
21                                       )
                 Defendants.             )
22 _____)

23
             COME NOW THE PLAINTIFFS, and for their cause of action, state
24
25 as follows:

26 COMPLAINT Page 1 of 14
27

# I.    JURISDICTION AND VENUE

1.1    Plaintiffs are individuals and corporate entities who reside in and operate retail internet services within the Eastern District of Washington.

1.2    Defendant Grant County P.U.D. No. 2 is a municipal corporation organized under the authority of Washington law, which owns and operates telecommunication facilities within the Eastern District of Washington.

1.3    Defendant Northwest Open Access Network is a mutual nonprofit corporation organized and licensed under the laws of the State of Washington.  Northwest Open Access Network is owned and/or operated mutually by Grant County P.U.D. No. 2, together with other Washington public utility districts.  NoaNet transacts business within the entire state of Washington.

1.4    This action is based upon violations of federal anti-trust law, Title 15 U.S.C., together with violations of Washington State statutes.

1.5    This court has jurisdiction over violations of Title 15 U.S.C. under 28 USC 1331and and has supplemental jurisdiction of issues based on state law under 28 U.S.C. 1367.

## II.    STATEMENT OF FACTS ON WHICH COMPLAINT IS BASED

2.1    Grant County P.U.D. No. 2 (the P.U.D.) constructed a fiber optic telecommunications system within Grant County to provide telecom infrastructure for its own corporate needs.  In the late 1990s, the P.U.D. decided to expand its fiber optic system to provide public telecom services for every building in Grant County that had electrical service and that would interface with worldwide telecom systems.

2.2    In 2000, the Washington State Legislature enacted RCW 54.16.330(1), which authorized public utility districts to sell or lease excess telecom capacity to wholesale providers of those services.  The enabling statute specifically prohibited the public utilities from providing telecom services directly to end users.

2.3    In order to circumvent its lack of authority to provide telecom services directly to end users, the P.U.D. entered into a secret agreement with Benton R.E.A. to provide telecom services to end users in Grant County.

2.4    The P.U.D. also subsidized certain other preferred service providers by means of unauthorized rebates, purchases of products at inflated prices, and by providing services at rates substantially below market rates.

COMPLAINT Page 3 of 14

2.5    The P.U.D. agreed to pay all of Benton R.E.A.'s costs of operation related to the provision of telecom services to end users in Grant County, and paid Benton R.E.A. ten percent (10%) above "costs" to induce it to become the principal telecom services provider within Grant County, and to directly compete with plaintiffs and other telecom providers already in business in Grant County.  In addition, the P.U.D. informally promised to provide electrical power to Benton R.E.A. at below market rates as additional incentive for their agreement to provide telecom services within Grant County.

2.6    In return for the P.U.D.'s provision of unfair and unlawful subsidies, rebates, discounts, potential customers, and other incentives, Benton R.E.A. agreed to set its rates for retail services at artificially low rates. As a result of the P.U.D.'s actions, all retail telecom providers were forced to match the artificially low rates dictated by the P.U.D. and to provide services at substantially less than free market rates.

2.7    At the end of 2002, Benton R.E.A. terminated its telecom operation in Grant County after they concluded that the P.U.D. was not going to honor its commitment to provide electrical power at bargain rates which the

COMPLAINT Page 4 of 14

cooperative believed was part of its agreement to act as the P.U.D.'s

designated telecom provider in Grant County.

2.8     After Benton R.E.A. terminated its telecom services operation in

Grant County, the P.U.D. entered into an agreement with Donobi, an internet

service provider, to subsidize the purchase of Benton R.E.A.'s customers

and equipment by Donobi.

2.9     In 2000, the P.U.D. entered into another enterprise intended to

circumvent its lack of authority to provide telecommunications services to

"end-users".  The P.U.D. entered into an agreement with other public utility

districts to form the Northwest Open Access Network (NoaNet), a business

entity owned by the participating public utility districts formed for the

purpose of marketing the telecom capacities of all participating public

utilities directly to end-users.

2.10   NoaNet was financed by the sale of revenue bonds which were

guaranteed by the member public utility districts, including Grant County

P.U.D..

2.11   Grant County P.U.D., as a member/shareholder of NoaNet, has paid

14.8% of the startup costs of NoaNet, and continues to pay 14.8% of the

COMPLAINT Page 5 of 14

interest and principal on the bonds sold to finance the creation of NoaNet, and pays such assessments as are requested to cover NoaNet's operating expenses.

2.12    In 2003, NoaNet began to solicit and establish business relationships with institutional and commercial end-users in concert with public utility districts and one or more favored service providers.

2.13    NoaNet is incorporated as a non-profit mutual corporation.  By authority of the enabling statute, RCW 24.06.035, a non-profit mutual corporation may transfer all surplus funds (profits) back to its members or shareholders.

2.14    The P.U.D. and other public utility district owners of NoaNet grant unfair preferential treatment, subsidies, rates and services to NoaNet and NoaNet's customers over plaintiffs and other competing telecom service providers.

2.15    The P.U.D. and NoaNet jointly approached existing customers of plaintiffs to offer services via NoaNet, thereby diminishing plaintiff's customer base.

2.16    The P.U.D. has also engaged in unlawful agreements granting

COMPLAINT Page 6 of 14

1  preferential treatment, subsidies, and extension of credit to Vib.TV,

2  LocalTel, Benton R.E.A. d/b/a PowertelNet, Donobi, Northwest Telephone,

3
4  Coulee Dam Federal Credit Union, CU online and Choice net, which

5  demonstrate an ongoing intention and plan by the P.U.D. in concert with

6  other Washington P.U.D.s to monopolize telecommunications in the state of

7
8  Washington, to the detriment of local telecommunication providers.

9  2.17   The consequences of the P.U.D.'s actions have been to artificially

10  depress the retail price which competing independent providers have been

11
12  able to charge for their services, while systematically directing retail

13  customers away from plaintiffs to the providers subsidized by the P.U.D.,

14
15  with the purpose of monopolizing telecom services.

16  2.18   As a direct result of the anti-competitive actions, illegal price-fixing

17  actions, and the monopolistic actions of the P.U.D., plaintiffs have been

18
19  unlawfully deprived of income which they could have received, but for the

20  illegal actions of the P.U.D.

21
          III.   FEDERAL CAUSE OF ACTION – VIOLATIONS OF
22
                SHERMAN-CLAYTON ANTI-TRUST ACT
23
24  3.1   The actions of Grant County P.U.D., other Washington public utility

25  districts, NoaNet and other subsidized telecommunication entities constitute

26
COMPLAINT Page 7 of 14
27

an unfair and unreasonable conspiracy in restraint of trade in violation of Title 15 U.S.C. § 1.

3.2    The actions of the Grant County P.U.D. in combination and conspiracy with other Washington public utility districts, NoaNet and other subsidized telecommunication entities constitute a monopoly or attempt to monopolize a part of the trade or commerce through unreasonable and illegal methods in violation of Title 15 U.S.C. § 2 and § 18.

3.3    The actions of Grant County P.U.D. in combination and conspiracy with other Washington public utility districts, NoaNet and other subsidized telecommunication entities unfairly discriminate against plaintiffs in price of services offered, discounts, rebates, and allowances, and were designed to favor those service providers which the P.U.D. chose to  subsidize in violation of Title 15 U.S.C. § 13 and Title 15 U.S.C. § 13a.

3.4    The anti-competitive actions of Grant County P.U.D., in combination and conspiracy with other Washington public utility districts, NoaNet and other subsidized telecommunication entities are against public policy and in violation of the Sherman-Clayton Anti-Trust Act, U.S.C. Title 15, proximately caused financial damages to the plaintiffs for which they are

1    entitled to judgment for treble damages, attorney fees, costs and injunctive

2    relief under Title 15 U.S.C. § 15(a)(d) & Title 15 U.S.C. §§ 25, 26.

3
4        **IV.    VIOLATIONS OF WASHINGTON STATE ANTI-TRUST LAW**

5    4.1    The actions of the P.U.D. in combination and conspiracy with other

6    Washington public utility districts, NoaNet and other subsidized

7
8    telecommunication entities constitute unfair and deceptive acts and practices

9    in the conduct of trade or commerce and are unlawful under RCW

10   19.86.020.

11

12   4.2    The actions of the P.U.D. in combination and conspiracy with other

13   Washington public utility districts, NoaNet and other subsidized

14
15   telecommunication entities constitute a contract, combination in the form of

16   a trust or conspiracy in restraint of trade or commerce and are unlawful

17   under RCW 19.86.030.

18

19   4.3    The actions of the P.U.D. in combination and conspiracy with other

20   Washington public utility districts, NoaNet and other subsidized

21
22   telecommunication entities constitute a monopoly or attempt to monopolize

23   by combining or conspiring with any other person or persons to monopolize

24   any part of trade or commerce and are unlawful under RCW 19.86.040.

25

26   COMPLAINT Page 9 of 14

27

4.4    The actions of the P.U.D. in acquiring shares of NoaNet have accomplished the intended purpose of substantially lessening competition and tending to create a monopoly in telecommunications and are in violation of RCW 19.86.060.

4.5    The unfair and discriminatory preferences carried out by the P.U.D. are in violation of RCW 80.36.080, 80.36.170, 80.36.180, 80.36.186.

4.6    Plaintiffs are entitled to treble damages and attorney fees under RCW 19.86.090, 80.36.360, and 80.04.440.

## V.  ULTRA VIRES

5.1    Under Washington law, public utility districts are specifically prohibited from engaging in the provision of retail telecom directly to end-users.

5.2    Except as specifically authorized by RCW 54.16.330, no statute or law applicable to Washington public utility districts empowers a public utility district to make expenditures of public funds for telecommunications facilities or services.

5.3    Any expenditure of public funds for telecommunications facilities or services by a Washington public utility district, except as otherwise

1  specifically authorized by RCW 54.16.330, constitutes ultra vires conduct.

2  5.4    The P.U.D. is a member/shareholder of NoaNet.  Because the P.U.D.

3

4  and other public utility districts are prohibited from engaging in the

5  provision of retail telecom services directly to end-users, the P.U.D. is

6  likewise prohibited from accomplishing the same prohibited function by

7

8  creating a mutual corporation with other public utility districts to accomplish

9  through a subsidiary corporation what they are prohibited from doing

10  directly.

11

12  5.5    The actions of the P.U.D. in creating NoaNet are ultra-vires and

13  contrary to law.  Because NoaNet was formed and owned by the P.U.D. and

14

15  other public utility districts, NoaNet is prohibited from engaging in the

16  provision of retail telecom services to end-users.

17

18  5.6    Because the P.U.D., other public utility districts, and NoaNet are

19  prohibited by statute from providing retail telecom services to end-users, the

20  P.U.D. should be restrained from any further participation in NoaNet and

21

22  NoaNet should be restrained from engaging in the provision of retail telecom

23  services to end-users under Title 15 U.S.C. § 26.

24

25

26  COMPLAINT Page 11 of 14

27

## VI.    UNCONSTITUTIONAL LENDING OF CREDIT AND GIFT OF PUBLIC FUNDS

6.1     Washington Constitution Article 8, section 7 prohibits any municipal corporation from giving money, property, or loan its money or credit to any individual, association, company or corporation, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

6.2     In the formation of NoaNet, and in the annual payment of assessments to operating costs, Grant County P.U.D. has donated public money to a private association/corporation to the detriment of plaintiffs.

6.3     The explicit and implicit guarantee of NoaNet revenue bonds by Grant County P.U.D. constituted an unconstitutional lending of credit of a municipal corporation to a private corporation to the detriment of plaintiffs.

6.4     Grant County P.U.D. did not have authority to subsidize the operation of Benton R.E.A., the purchase of Benton R.E.A.'s customers and equipment by Donobi, or the subsidies given to other telecommunication entities.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

COMPLAINT Page 12 of 14

7.1    For judgment against defendants for damages sustained in lost

revenues and loss of future income resulting from the illegal actions of Grant

County P.U.D. and NoaNet.

7.2    For judgment for treble Plaintiff's actual damages.

7.3    For award of attorney fees, costs and prejudgment interest.

7.4    For declaratory relief ruling that neither the P.U.D. nor NoaNet have

authority to provide retail telecom services to end-users.

7.5    For injunctive relief enjoining both Grant County P.U.D. No. 2 and

NoaNet from providing telecom services to end-users and establishing

sanctions for violation of that injunction.

7.6    For declaratory relief ruling that the forming and financing of NoaNet

by Grant County P.U.D. and other Washington public utility districts was

ultra vires and without legal authority.

7.7    For declaratory relief ruling that the financing of NoaNet by Grant

County P.U.D. and other Washington public utility districts was and is in

violation of the constitutional prohibition against donating public funds or

loaning money and credit to a private association or corporation.

7.8    For injunctive relief enjoining NoaNet from providing any further

COMPLAINT Page 13 of 14

1   telecommunications services within the state of Washington.

2   7.9     For injunctive relief enjoining Grant County P.U.D. from engaging in

3
    unfair pricing, subsidies and actions.
4

5   7.10    For such other and further relief as is just and equitable.

6

7
            Dated this 22nd day of February, 2007.
8

9

10                                          s/ John Luke McKean_____
11                                          John Luke McKean/WSBA #13294

12
                                            Attorney for Plaintiffs
13                                          McKean Law Office P.S. Corp.
14                                          704 East Olive Avenue
                                            Moses Lake, WA 98837
15                                          Telephone: (509) 765-4451
16                                          Fax: (509) 765-6019
                                            Email: jlmckean@hotmail.com
17

18

19

20

21

22

23

24

25

26      COMPLAINT Page 14 of 14
27